UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EXECUTIVE RISK INDEMNITY INC.,
as subrogee of ANDREWS INTERNATIONAL,
INC. and COPSTAT SECURITY, LLC,

            Plaintiffs,

         -against-

FIELDBRIDGE ASSOCIATES LLC,

           Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

13 CV 4354 (KNF)



KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      The plaintiffs, Executive Risk Indemnity Inc. ("Executive Risk"), and its insureds, Andrews International, Inc. ("Andrews") and Copstat Security, LLC ("Copstat"), have made an application for attorneys' fees pursuant to Federal Rule of Civil Procedure 54. The plaintiffs seek attorneys' fees and costs incurred in connection with the defense of Andrews and Copstat in an action denominated Willis Jackson v. Fieldbridge Associates LLC, Andrews International, Inc. and Copstat Security, Inc. (hereinafter "underlying action"), which was filed in New York State Supreme Court, Bronx County, in 2008.[1] Defendant Fieldbridge Associates, LLC ("Fieldbridge") acknowledges that it is liable for the attorneys' fees and costs incurred by the plaintiffs in connection with the defense of the underlying action and, on April 29, 2014, executed a stipulation to that effect. The plaintiffs also seek to recover the attorneys' fees and costs they incurred in bringing the instant action, which, they contend, was occasioned by

---

[1] As set forth in the plaintiffs' motion papers, the underlying action alleged that the plaintiff therein sustained personal injuries after being shot by unknown parties while he was on premises owned by Fieldbridge, through the negligence, carelessness and recklessness of, inter alia, Andrews and Copstat, who provided security services at that location.

Fieldbridge's initial refusal to honor its obligation to the plaintiffs, pursuant to a prior agreement.

The defendant opposes the plaintiffs' application on the grounds that the amount of the attorneys' fees requested in connection with the defense of the underlying action is excessive and the plaintiffs are not entitled to the fees incurred in bringing this action.

*Plaintiffs' Contentions*

The plaintiffs seek attorneys' fees and costs in the amount of $161,386.06 for the defense of Andrews and Copstat in the underlying action. In support of their application, the plaintiffs have submitted the affirmation of their counsel in that action, Barry Jacobs, Esq. ("Jacobs"), a partner of the law firm Abrams, Gorelick, Friedman and Jacobson, LLP ("Abrams law firm"). In his affirmation, Jacobs avers that he was hired by the plaintiffs to provide a defense of Andrews and Copstat in the underlying action. Jacobs contends that, in the course of his defense of Andrews and Copstat, he moved for summary judgment dismissing the case and, thereafter, filed a supplemental affirmation in which he alerted the court to a "strikingly similar case, Gripper v. Fieldbridge Associates, LLC and Andrews International LLC, which was also before the [New York State] Supreme Court, County of Bronx." According to Jacobs:

> The plaintiffs in Gripper were represented by the same attorneys as the plaintiff in the [u]nderlying [a]ction, and both cases resulted in motion practice prior to the completion of discovery. The allegations of negligence as set forth in Gripper were identical to the allegations of negligence set forth in the [u]nderlying [a]ction and the Bill of Particulars to those cases were virtually the same. . . . By alerting the underlying court of the Gripper case and providing a copy of the court's decision granting dismissal of the Gripper action, I advised the court of legal precedent which required [it] to grant Andrews's and Copstat's motion for summary judgment.

By an order dated March 27, 2013, the New York State Supreme Court granted the motion for summary judgment and dismissed the action.

Through his affirmation, Jacobs avers that he graduated from Brooklyn Law School in 1980, was admitted to the New York State bar in 1981 and is admitted to the United States District Court, Southern and Eastern Districts of New York, and to the United States Court of Appeals, Second Circuit. Jacobs avers that he has had extensive trial experience during his thirty-three years in practice and that his entire career has been devoted to the defense of general liability and professional liability claims. Jacobs is an instructor at the National Institute of Trial Advocacy.

Jacobs asserts that he spent 129.7 hours in defending the underlying action and that the Abrams law firm spent 464.4 hours in defending the action. The hours worked included court appearances, preparing pleadings and motion papers, reviewing and analyzing file materials, taking and defending depositions, legal research and corresponding with the parties to the matter. In addition, the Abrams law firm obtained the services of investigators and experts, which were necessary to the defense of the underlying action, which involved general liability, contract and criminal law issues.

Jacobs states that his hourly rate is $290, the hourly rate of the associates who worked with him on this matter was $225, and the paralegal and clerk time was billed at the rate of $100 per hour. Annexed as exhibits to Jacobs' affirmation are: (1) an Excel spread sheet reflecting the amounts of the invoices submitted to Chubb & Son and the amounts paid thereon; (2) the Abrams law firm's itemized bills for the legal fees and costs incurred in the defense of the underlying action, including contemporaneous time records; (3) the checks received by the Abrams law firm from Executive Risk in payment of the fees and costs incurred; and (4) itemized bills of costs for investigative work, experts and depositions.

The plaintiffs contend that they are also entitled to the attorneys' fees and costs incurred in bringing the instant action. The plaintiffs assert that "[h]ad Fieldbridge's insurer . . . accepted Plaintiffs' defense in the [u]nderlying [a]ction then the within action would not have been necessary. Plaintiffs were forced to pursue this separate litigation against Fieldbridge before Fieldbridge and [its insurer] finally acknowledged their clear contractual obligation."

Through an affirmation submitted to the Court, the plaintiffs' counsel in this action, Andrew I. Hamelsky, Esq. ("Hamelsky"), seeks attorneys' fees in the amount of $16,888.60 and costs in the amount of $519.95. Hamelsky, who is a partner of the law firm White and Williams, LLP, avers that he was hired by Chubb & Son on behalf of Executive Risk to commence this action against Fieldbridge in order to recover defense costs expended by Chubb & Son and Executive Risk, which should have been assumed by Fieldbridge and its insurer. Hamelsky contends that he spent 25.4 hours, at the hourly rate of $265, handling this matter, and that his associate, Jennifer A. Scarcella, Esq., who also worked on this matter, spent 30.2 hours, which were billed at the hourly rate of $180.

Hamelsky notes that he has provided professional resumes for himself and his associate and contends that his hourly rate is in line with the prevailing rate charged by attorneys in the New York City area who practice a similar type of law and have a similar level of experience. The plaintiffs' submissions in support of their application for costs and fees incurred in connection with the instant action are bereft of any contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.

*Defendant's Contentions*

Fieldbridge opposes the plaintiffs' application, asserting that they are not entitled to the full amount of attorneys' fees requested in connection with the defense of the underlying action

4

because the amount sought is excessive. The defendant also asserts that the plaintiffs are not entitled to be reimbursed for the attorneys' fees incurred in this action.

The defendant argues that the plaintiffs have failed to establish that the number of hours their attorneys expended on the underlying action is reasonable. For example, the defendant contends that the number of hours billed by the Abrams law firm for reviewing deposition transcripts is "absurd and grossly unreasonable." The defendant asserts that this is evidenced by the fact that its defense counsel in the underlying action billed substantially fewer hours for reviewing the same transcripts. The defendant also contends, among other things, that the hours spent preparing the summary judgment motion in the underlying action are excessive; according to the defendants, the plaintiffs billed 131 hours for preparing the summary judgment motion, while their firm billed only 21 hours for the same task.

The defendant asserts that the hourly rates charged by the Abrams law firm are unreasonable. In particular, the defendant asserts that the $290 hourly fee for a law firm partner is too high and that its attorneys billed only $190 per hour for the same or similar work. The defendant also asserts that the plaintiffs have claimed that they incurred $161,386 in attorneys' fees and costs but that the evidence they have submitted shows that their fees and costs were in fact only $107,467.55. With respect to the plaintiffs' application for attorneys' fees and costs incurred in bringing the instant action, the defendant asserts that recovery for such fees and costs is not supported by New York law.

*Plaintiffs' Reply*

In their reply memorandum of law, the plaintiffs contend that the amount of time they spent defending the underlying action is reasonable. According to the plaintiffs, the fact that Fieldbridge's attorneys in the underlying action spent less time on the matter is not decisive

because they simply "piggy backed" on the defense provided by the Abrams law firm; among other things, Fieldbridge's attorneys filed a "me too" summary judgment motion after the Abrams law firm had filed their motion. In addition, Fieldbridge's attorneys failed to discover the <u>Gripper</u> case, yet benefitted from its presentation to the court in a supplemental filing, which resulted in the dismissal of the underlying action against all the defendants. The plaintiffs also note that Fieldbridge's claims about the time spent on their respective summary judgment motions is misleading because Fieldbridge's motion was just three and one-half pages while the plaintiffs' motion was twenty-two pages; taking into consideration the time billed by each firm for this task, the per-page fee for preparing the motion was the same, that is, six hours per page. The plaintiffs contend further that the underlying action was complex and that Fieldbridge, Andrews and Copstat faced significant exposure with respect to the damages sought.

The plaintiffs also defend Jacobs' $290 hourly rate, stating that it is reasonable in light of Jacobs' experience and skill. The plaintiffs make citation to case law in support of their claim, to the effect that courts in this jurisdiction have found hourly rates of $425, $400 and $350 to be reasonable for attorneys of comparable experience, skill and reputation. The plaintiffs also aver, through their counsel, that while copies of the checks submitted to the Court represent only $107,467.55 of the payments made by Chubb & Son for costs and attorneys' fees, the remaining amount, that is, $53,918.51, was paid to the Abrams law firm, as reflected in a chart of payments submitted in support of the instant application, although copies of the checks drawn for that amount could not be found.

***Legal Standard***

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." <u>Barfield v. New York City Health & Hospitals Corp.</u>, 537 F.3d

132, 151 (2d Cir. 2008). When exercising their discretion to determine the reasonableness of attorneys' fees, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

***Application of Legal Standard***

A.  Defense of Underlying Action

 Hourly Rate

Jacobs seeks an hourly rate of $290. This rate is reflected in the contemporaneous time

records prepared by the Abrams law firm, which the plaintiffs submitted in support of their application for attorneys' fees incurred in the underlying action.

The plaintiffs failed to provide, in their moving papers, evidence establishing that the hourly rate charged by the Abrams law firm for Jacobs' services is in line with the prevailing rate in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.[2]  However, the Court finds that, taking into consideration its own knowledge of hourly rates in the community, see McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (the court "may also use its knowledge of the relevant market when determining the reasonable hourly rate") (citing Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987) (a district judge may "rely in part on the judge's own knowledge of private firm hourly rates in the community")) and relevant case law, see, e.g., Charles v. City of New York, et al., No. 13 Civ. 3547, 2014 WL 4384155, at *3 (S.D.N.Y. Sept. 4, 2014) (finding $450 a reasonable hourly rate for partner with 25 years experience who was actively involved in firm's personal injury cases), Jacobs' experience, reputation and skill are evidenced sufficiently and that the $290 hourly rate charged

---

[2]The plaintiffs attempted to cure this deficiency by submitting, through their reply memorandum of law, citation to cases in this district showing that Jacobs' hourly rate is within the range of what a reasonable client would be willing to pay for similar services of attorneys of such reasonably comparable experience.  It was not proper for the plaintiffs to submit, in response to the defendant's challenge to their fee application, arguments justifying the reasonableness of the fees sought for the first time in their reply.  See Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").  Rather, the plaintiffs were obligated in their initial moving papers, not in their reply, to provide evidence supporting the reasonableness of the rates charged by the attorneys who worked on this matter.  By failing to provide such evidence of reasonableness in their initial motion papers, the plaintiffs deprived the defendant of the opportunity to analyze their fee application by considering, inter alia, the Johnson factors, which the defendant could reasonably anticipate the Court would weigh when it performed its analysis of the fully submitted application.

by him is reasonable in comparison to the rates charged by attorneys with similar experience and qualifications who practice in the Southern District of New York. In addition, in weighing the Johnson factors noted above, the Court finds that the complexity of the underlying action, the time and labor required, the amount of damages being sought and the results obtained, all weigh in favor of finding that the rate charged by Jacobs is reasonable.

The plaintiffs' submissions in support of their request for attorneys' fees fail to identify the attorneys, other than Jacobs, who rendered legal services to them or to provide, for these individuals, information about their respective backgrounds and experiences; nor was any information presented by the plaintiffs concerning the identity of the paralegals and clerks who claim hours worked, or their experiences, reputations and abilities.[3] Since the other attorneys, paralegals and clerks who worked on this matter are never mentioned by name in either Jacobs' affirmation or the memorandum of law in support of the attorneys' fees application, and no information is provided about them, it is not possible for the Court to determine whether the hourly rate and the hours claimed for the persons asserted to be associates, paralegals and clerks are reasonable. Therefore, awarding fees for the hours of work claimed by attorneys (other than Jacobs), paralegals and clerks is not warranted.

Hours Worked

The plaintiffs have submitted invoices prepared by the Abrams law firm in connection with the underlying action for the period June 2008 through July 2013. Included in the invoices are contemporaneous time records indicating, for law firm personnel, the date, the hours

---

[3] In the contemporaneous time records submitted by the plaintiffs in support of their application, associates, paralegals and clerks who claim hours worked are indicated only by their initials and no further explanation or a key which identifies these individuals is provided.

9

expended and the nature of the work done.  For the reasons discussed above, the Court has set aside the entries for attorneys, paralegals and clerks for whom no information was provided and has reviewed only the entries reflecting the work done by Jacobs.

In reviewing these records, the Court finds that the fees associated with certain invoice entries, dated May 30, 2013, through June 20, 2013, must be disallowed because the work described in these entries pertains to matters outside the scope of the defense of the underlying action.  In particular, these entries, which constitute 5.5 hours, describe work done in consultation with Hamelsky and the law firm White and Williams, LLP, concerning means to be employed in pursuing an indemnity claim against Fieldbridge.  The Court notes that the issue of an indemnity claim against Fieldbridge was addressed in the summary judgment motion papers filed by the plaintiffs in the underlying action and therefore, to some extent, may reasonably be considered a legitimate component of Jacobs' representation of the plaintiffs in that action.  Consequently, the Court finds that a portion of the time spent on activities related to pursuing an indemnity claim against Fieldbridge is reasonable.[4]  However, subsequent entries concerning this matter cannot be said to fall within the parameters of the representation Jacobs was hired to provide, and therefore are disallowed.

Upon review of the contemporaneous time records presented to the Court, and taking into consideration the Johnson factors as noted above, the Court finds that, except for those fees which have been determined to be disallowed, the attorneys' fees incurred by the plaintiffs for

---

[4]For example, the entry dated May 16, 2013, stating "[p]reparation of email to counsel for Fieldbridge communicating revised and final counter demand re: indemnity claim" and the entry dated May 30, 2013, stating "[t]elephone conference with Andrew Hamelsky, Esq., of White and Williams re: enforcement of indemnity provision in contract," appear to fall within that group.

10

the work done by Jacobs in connection with defending Andrews and Copstat in the underlying action, that is, $36,018, are reasonable.

B.  The Instant Motion

Although the plaintiffs ordinarily would be entitled to seek attorneys' fees and costs in connection with the motion now before the Court, see Valley Disposal, Inc. v. Central Vt. Solid Waste Mgmt. Dist., 71 F.3d 1053, 1060 (2d Cir. 1995) ("[U]nless there are reasons to the contrary, motion costs should be granted whenever underlying costs are allowed."), in this case the application must be denied because the plaintiffs have failed to provide, as they are required to do, any contemporaneous time records indicating for each attorney, the date, the hours expended, and the nature of the work done.

C.  Costs

The Court finds that the plaintiffs' costs, incurred in connection with defending the underlying action, in the amount of $24,385.38, are reasonable.

*Conclusion*

For the reasons set forth above, the plaintiffs' application for attorneys' fees and costs, Docket Entry No. 18, is granted, in part. Accordingly, the plaintiffs are awarded attorneys' fees in the amount of $36,018 and costs in the amount of $24,385.38, to be paid by the defendant.

Dated: New York, New York  
       March 18, 2015

SO ORDERED:

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE